UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.        Case No. 18-CR-81

JENNIFER GOSS,

        Defendant.

**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR PROBATION WITH HOME CONFINEMENT AND NO JAIL TIME**

**I.    Case Background**

The facts of this case are well-established through extensive pre-indictment investigation, discussion of the parties, and recitation in the plea agreement. For a period of three years, Jennifer Goss handled the books at Company A. When one of the owners of the business hired an accounting firm to value his share of it, he discovered Ms. Goss had defrauded the company of just over $200,000. She did so in two main ways: (1) by issuing checks to her and her husband and then changing the entries in the accounting system to look like legitimate company expenses or health insurance reimbursements, or (2) by having the company pay her and her husband's personal credit cards and Paypal purchases. *See* PSR at ¶¶ 9-15. The victims commenced a civil lawsuit against Ms. Goss and her husband Eric prior to the criminal investigation, which was settled in April 2018 for $750,000. This amount encompasses all of the loss involved in this criminal case, and the Gosses have agreed to pay $700 per month for two years, increasing to $1,000 per

month thereafter. *See id.* at ¶ 24. They are up-to-date on payments for this. Ms. Goss recognizes the seriousness of the offense, the impact it had (and continues to have) on the victims and her own family, and she is very remorseful for her actions. She understands that there have been and will be significant consequences for her crime. *See id.* at ¶ 27.

**II.    Discussion.**

The United States Supreme Court has reaffirmed that sentencing judges should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue," because "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011). In order to achieve this, sentencing courts enjoy a high degree of discretion at sentencing, and should "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come." *Id.* Ultimately, the sentencing court's duty "is always to sentence the defendant as he stands before the court on the day of sentencing." *Id.* at 1242.

Further sentencing guidance has been provided by the Supreme Court in *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007), which detailed the proper sentencing procedure to be followed by district courts post-*United States v. Booker*, 543 U.S. 220 (2005). *Gall* directs that district courts should begin a sentencing proceeding by correctly calculating the applicable Sentencing Guideline range. *See Gall* at 596 ("the Guidelines should be the starting point and initial benchmark."). However, because the Guidelines are not the only consideration at sentencing, a district court must then give each of the parties an opportunity to argue for whatever sentence they deem appropriate. *See id.*

After hearing arguments, the district court must then consider the 18 U.S.C. § 3553(a) factors[1] to arrive at a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing described in subsection (a)(2). *See id*.

> **III.    The factors listed in 18 U.S.C. § 3553(a), as applied to Ms. Goss' case, all support a sentence of probation with home confinement and no jail time.**

Almost every factor this Court must consider establishes that Ms. Goss has exhibited good character throughout her life, does not pose a danger to the community, and does not need any jail time to achieve the goals of sentencing. These include:

1. **No criminal record:** She has no prior misdemeanor or felony convictions of any kind. *See* PSR at ¶¶ 40-43.

2. **Strong and supportive family and long-term ties to the greater Milwaukee area:** Ms. Goss is from a close family and enjoys their support through this criminal process, including her mother and father, Lori and Robert; her two brothers, Anthony and Joseph; and most importantly her husband Eric and their two children. *See* PSR at ¶¶ 48-54; *see also* three attached letters in support from her husband, mother, and mother-in-law. Her children, ages 12 and 10, especially need their mother on a daily basis as they grow thorough their formative years. Any period of incarceration will be devastating to the family.

---

[1] Subsection (a) of §3553 lays out in detail what factors a district court is to consider when sentencing a defendant, and include: the nature of the crime; the history, characteristics, and rehabilitative needs of the defendant; the public interest in protection, deterrence, and punishment; the type of sentences available; the applicable Sentencing Guidelines (including pertinent policy statements); the need for uniformity in sentencing similar defendants for similar crimes; and restitution.

3. **Excellent employment history, even when the period of embezzlement is discounted:** Ms. Goss has always held productive and good-paying employment her entire adult life. She has worked as a technical services representative at Waste Management; as an office manager/bookkeeper at Company A for several years before engaging in the instant crime; and significantly, at Costco in Menomonee Falls as an optical manager since October 2015. This is a very good job that pays well, has the potential for career advancement, and carries very good benefits for Ms. Goss and her family. *See* PSR at ¶¶ 69-72; *see also* letter in support from her manager, Daniel Slawinski. As Mr. Slawinski notes, any period of incarceration will likely result in her termination from Costco, which would not only end her promising career there, but jeopardize the monthly payments she and her husband make to the victim for the civil judgment (and soon to be criminal restitution).

4. **A good deal of punishment has already been inflicted:** Ms. Goss now has a felony on her criminal record and this has many life-long repercussions all its own, including curtailing certain civil rights while on supervision, eliminating Second Amendment rights for life, and possibly limiting future job and educational opportunities. There is no realistic chance of expungement in federal court, nor any likelihood she would ever be pardoned by the President, so this conviction and record will follow her for the rest of her life.

5. **No AODA issues or treatment needs:** She does not use or abuse alcohol or other drugs and has no history of doing so. *See* PSR at ¶¶ 62-65.

6. **She has engaged in extraordinary acceptance of responsibility and ongoing efforts to pay restitution:** As mentioned, Ms. Goss stole just over $200,000 from Company A, and has agreed to pay that back not just as part of criminal restitution in this case[2], but also as part of a larger civil judgment against her and her husband. They pay $700 per month on this now, to be increased to $1,000 per month in April 2020. This is an amount that seems to greatly exceed most monthly restitution payments on any type of case in federal court, where the highest monthly payment undersigned counsel can recall being ordered was probably in the neighborhood of $150-$200. Her and her husband's willingness to settle the civil lawsuit not only will help to make the victim financially whole more quickly than in an average case, but also reflects her extraordinary acceptance of responsibility. That is, Ms. Goss retained counsel and engaged in good-faith and productive pre-indictment discussion and negotiation with the government to settle this case without the need to involve a grand jury, tie up court and government resources, and drag the case out even longer for the victim.

7. **No violations while on pre-trial release or other criminal activity since her termination at Company A:** Ms. Goss has not committed any further crimes since 2015 nor has violated any terms of her pretrial release.

---

[2] She has also agreed to pay nearly $100,000 in forensic accounting expenses. After her guilty plea, the Supreme Court held that such expenses incurred before the victim's participation in the government's investigation cannot be ordered for restitution. *See Lagos v. United States*, 138 S. Ct. 1684 (decided May 29th, 2018). Ms. Goss does not seek to undo this portion of the plea agreement, but asks this Court to consider the Supreme Court's ruling and her significant monthly civil judgment payment when setting the monthly restitution payment amount. *See* 18 U.S.C. §§ 3664(f)(2) and (3)(B) (allowing courts to set nominal periodic payments after considering the financial resources, projected earnings, and other financial obligations of the defendant).

8. **Victim impact statements should not drive the sentence here:** Ms. Goss has a constitutionally protected due process right to be sentenced only upon accurate information. *See United States v. Tucker*, 404 U.S. 443, 447 (1972). While the victim impact statements are important for this Court to consider and understandably reflect hostility and anger towards Ms. Goss for her crime, there are a few key portions that this Court must carefully scrutinize before relying upon them to impact the sentence it may otherwise choose for her. These include:

   a. Owner of Company A says that the business ceased to exist due to her fraud and was worth $2 million before it closed. *See* PSR at ¶ 19. While her crime undoubtedly had a negative impact on the business, Ms. Goss disputes that her actions were the sole cause of the business closing. If the $2 million figure is accurate, then the amount she stole equates to approximately 10% of the value of the business right before it closed. While this number is not insignificant, it is also not an amount that by itself would probably have caused the business to shut down, especially considering that the money was stolen over the course of years and not all at once.

   b. Wife of Owner of Company A asserts that Ms. Goss' crime have directly impacted Owner's health. *See* PSR at ¶ 20. While the stress of this situation probably impacted his health conditions to some degree, there is no reliable evidence presented that it was the original cause of any of those conditions (she specifically mentions "latent

Parkinson's disease"). This Court must not sentence Ms. Goss on speculation concerning how her actions may have worsened pre-existing or otherwise-occurring medical conditions of the Owner (who is an elderly gentleman and who, based on reliable information and belief, was suffering from Lyme's disease since 2011- several years before Ms. Goss' crime began).

   c. The in-laws and a friend of the Owner also submitted statements, *see* PSR at ¶¶ 21-23, but it does not appear they qualify as "victims" under 18 U.S.C. § 3771(e)(2)(A) because they were not "directly and proximately harmed" by Ms. Goss' crime. Hence, their statements should be disregarded when imposing sentence.

9. **Insight into why she committed the crime through therapy:** Ms. Goss recognizes the severity of her crime and the incongruity between her committing it and her otherwise positive, pro-social, law-abiding background and personal history. To gain insight and perspective on her crime, she began to attend therapy earlier this year. *See* PSR ¶ 59. Undersigned counsel is in the process of trying to obtain a letter from her doctor regarding this, and will provide it to the Court and government as soon as it may be obtained. For purposes of this memorandum, it suffices to say that Ms. Goss has focused on analyzing the choices she made when comitting and then continuing the crime; the remorse she has for doing so and inflicting harm on the victim, her own family, and her reputation; and gaining insight into why she ever would engage in such conduct in the first place, including to support the lifestyle she

believed her family needed but now recognizes was unnecessary and done more to "keep up with the Joneses" than truly provide for her family.  Overall, regardless of the focus and substance of her therapy sessions, the simple fact she is engaging in therapy establishes she is inclined to critically assess her actions, identify and address the root cause(s), and take proactive steps to ensure she never engages in anything similar in the future.  This not only reduces any future risk she poses to the community, but also accomplishes specific deterrence and self-directed rehabilitation.

10. **Goals for the future:**  Ms. Goss wants to continue working productively, provide for her family, successfully complete the sentence imposed by this Court, and put this case- an aberration for her when considering her otherwise law-abiding and pro-social life to this point- behind her once and for all.

## IV.     Conclusion

The United States Supreme Court recognizes that probation is a significant punishment because it is a substantial restriction on a person's freedom.  *See Gall* at 595-96.  It would be reasonable for this Court to impose probation with lengthy home confinement as additional punishment (perhaps 6-12 months), especially when considering the many mitigating sentencing factors Ms. Goss presents.  This sentence would achieve the purposes of sentencing under § 3553(a) but be no greater than necessary to do so.

Respectfully submitted at Milwaukee, Wisconsin this 21st day of August, 2018.

                                        Pruhs & Donovan, S.C., Attorneys for
                                        Jennifer Goss

                                        /s/
                                        By: Christopher Donovan
                                        State Bar Number: 1055112

**Mailing Address:**

Pruhs & Donovan, S.C.
757 North Broadway #401
Milwaukee, WI 53202

Tel: (414) 221-1950
Fax: (414) 221-1959