UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

        Case No. 2:18-cr-00081-LA

  v.

JENNIFER GOSS

        Defendant.

---

**SENTENCING MEMORANDUM**

---

The nature and circumstances of the offense, especially the impact on the victims, makes clear that a 27 month term of imprisonment is a sentence that is sufficient, but not greater than necessary, to comply with the sentencing factors set out in 18 U.S.C. § 3553(a).

A. **Nature and Circumstances of the Offense**

*1. Betrayal*

Dennis Wick founded Financial Equipment Company ("FEC") in 1975. Jennifer Goss's actions bankrupted the company in 2015. (PSR ¶ 19) FEC employed Eric Goss for about ten years without any problems. Dennis Wick and his wife Laureen came to know Jennifer Goss from company picnics and Christmas parties prior to her marriage to Eric Goss. In 2008, Jennifer Goss was fired from her job at Waste Management and came to Dennis Wick in tears and stated that she needed a job to support her two children. Dennis Wick hired her as a secretary. Laureen and Dennis attended the Goss children's birthday parties. Eric and Jennifer Goss attended Laureen

and Dennis's wedding; Eric officiated it. During a meeting of FEC Shareholders in 2014, Dennis Wick made known his plans to pass on the company to Jennifer Goss and others.

It is this background that makes Jennifer Goss's betrayal of the Wicks so painful and heartbreaking to the Wicks. It's one thing to be robbed by a stranger. It's much worse when it is a friend who does it.

2. *Jennifer Goss repeatedly stole over a prolonged period of time even though she did not need to.*

This Court sees many financial crime cases or drug cases in which the defendant was addicted to something (drugs or gambling) or otherwise desperately poor. Those mitigating factors do not exist in this case. During this embezzlement scheme (2012-2015), the Goss's reported an annual income of $126,252 (2014) and $90,376.00 (2015). (PSR ¶ 75). In the PSR Jennifer Goss admits she stole because she could. (PSR ¶ 27) ("It started out gradually and as she saw there was no effective oversight, she kept pushing further and further until it was discovered."). The money she stole was not used for life's essentials, but for items such as her Netflix account.

Another aggravating factor is that the embezzlement was not a single bad decision. It occurred over several years (2012-2015) and there were many acts of deception and concealment. For example, as explained in the PSR, Jennifer Goss would write checks to herself and then change them to appear legitimate in the accounting system. Furthermore, Jennifer Goss did not stop stealing because she changed her mind and tried to pay the money back. She stopped because she got caught and fired.

3. *Financial Consequences to the Wicks.*

Dennis Wick, the founder, owner, and operator of FEC stated that FEC "ceased its existence on 10/3/2015, due to Jennifer Goss' embezzlement scheme." (PSR ¶ 75). In her recently filed sentencing memorandum, Jennifer Goss stated that she "disputes that her actions were the

sole cause of the business closing." (Dkt. 11) She then proceeds to argue that a $200,000 loss would not have shut down a $2,000,000 business. (*Id.*) That loss amount is only the amount of money that the United States could prove beyond a reasonable doubt that Jennifer Goss stole. It does not include the almost $100,000 in forensic accounting fees and several hundred thousand dollars in attorney's fees the Wicks spent to uncover her wrongdoing. If she would have confessed and immediately taken responsibility for her actions, they would not have had to spend all of that money.

The more accurate amount of loss caused to the company through her actions are reflected in the civil judgment of $750,000. Jennifer Goss may not have embezzled $750,000 from FEC, but her actions caused the company and its owners to lose that amount of money and therefore go bankrupt. The civil judgment for that amount proves the point.

What is beyond dispute, however, is that the Wicks have had to drastically lower the quality of their life because of Jennifer Goss's action. Dennis Wick withdrew a significant amount of money from his personal retirement accounts. The Wicks sold their vacation home and downsized from two cars to one. They used to take extensive vacations and now they do not take any. The Wicks earned the right to live comfortably and happily in their golden years; Jennifer Goss took that away from them.

   4.  *Non-pecuniary loss to the Wicks.*

Many of the letters in support of the Wicks show the same thing—Dennis Wick was a proud, charming, and hard-working businessman. Jennifer Goss's embezzlement, seeing his life's work destroyed, and dealing with the fall out have changed his personality and outlook on life for the worse. Laureen Wick writes:

- "Jennifer Goss not only ruined and demolished the reputation and physicality of a forty-year company but also that of my husband, Dennis Wick. I met Dennis thirteen years ago

after both of our spouses had died; I fell in love with a man that could speak on any topic with knowledge, that had an adventurous spirit and a no-nonsense business sense. While dealing with the rape and destruction of his whole universe, Dennis has withdrawn from the world to become an angry, distrustful, depressed individual."

- She continues, "Not only do I have to deal with my feelings of what Jennifer Goss has done to my life but also Dennis' emotions and health issues that have arisen from this six year nightmare. Dennis' doctor affirmed that the stress he's been under has exacerbated latent Parkinson's disease; now this has its own set of problems; nightmares, tremors, coordination consequences, cognition and speech issues that both of us and our family have to live with every day."

Friends of the Wicks made similar observations:

- "About two years ago they began to notice a change in Dennis. He became very withdrawn and quiet. They sold their motorcycle and became less active. They started refusing invitations to different events. Eventually, they shared what was happening with Dennis' company. They told them that he could not sleep at night and was becoming so nervous that he couldn't concentrate on things. He became more and more quiet when we were together and in time we noticed that he began to shake and could not control the movement in his hands. He also became to have stomach problems and would frequently have to excuse himself because he was getting sick. Laurie also became very nervous and worried about what was happening and stated that the problems with the lawsuit and all that was happening was affecting everything in their lives. Dennis was then diagnosed with depression and Parkinson disease. We watched a healthy, happy, active man become disengaged and worried to the point of sickness."

- "Medicine can help with the medical diagnosis. However, medicine cannot take away the betrayal and disappointment in people he trusted to run his company. Finally, they stated that the loss of his company that he worked a lifetime to build cannot be fixed with medication."

Dennis Wick's daughter-in-law succinctly echoes these sentiments:

- First I just want to say that Dennis is an amazing father in law, grandfather, and person and it has broken our hearts to see how deeply he's been affected by the actions of the defendant. It's especially hard to see a person who is usually always happy and extremely involved in his grandchildren's lives become withdrawn with grief and frustration from the repercussions of this case. More than anything his family wants a resolution that is fair for him so he can finally move forward and not have the weight of this case causing any more grief and pain in his life.

In her sentencing memorandum, Jennifer Goss stated that Laureen Wick cannot be medically certain that it was the stress from her embezzlement that caused his conditions to worsen.

4

(Dkt. 11). While it is important to not turn this case into a medical malpractice case, the underlying facts are clear: Dennis Wick was happy and healthy. Jennifer Goss embezzled from his company, destroyed his life's work, and then obstructed and litigated for years instead of accepting responsibility. Her post embezzlement actions forced the Wicks to spend hundreds of thousands of dollars on legal and forensic accounting fees. Dennis Wick by the end of this process was unhappy and not healthy. Living through what Dennis Wick has had to live through would cause harm to anyone's long term health.

Finally, although the several of the letters in support of the Wicks are not from victims, the Court can and should consider them because they show the impact on the victims. This is especially true now that Jennifer Goss is apparently disputing the degree that her embezzlement caused non-pecuniary harm to the Wicks. A sentencing judge has wide discretion to "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [the judge] may consider, or the source from which it may come." *Pepper v. United States*, 562 U.S. 476, 489 (2011) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)). These letters of support certainly fall within that scope.

### B. History and Characteristics of the Defendant

The PSR and Ms. Goss's Sentencing Memorandum lay out the facts surrounding Ms. Goss's history and characteristics. She does not have a criminal record; had a good childhood; has family support; and has a strong employment record. She does not have any AODA issues. While all of those facts are good things, they also make her conduct all the more baffling and inexcusable.

It is not true as stated in the sentencing memorandum that Ms. Goss has "engaged in extraordinary acceptance of responsibility and ongoing efforts to pay restitution." (Dkt. 11). From the time the embezzlement was discovered, Jennifer Goss obstructed the Wicks from reaching the

5

Case 2:18-cr-00081-LA   Filed 08/21/18   Page 5 of 6   Document 12

truth.  She refused to give the forensic accountants the password to the accounting system in an effort to impede their investigation.  Forensic accounting records also show that she erased certain accounting entries once she learned of the investigation.  Additionally, she refused to open certain cabinets that the investigators believed contained important information to the forensic investigation.  She dragged out the civil litigation through several years, several different lawyers, and only reached a settlement on the eve of federal criminal indictment.  These actions forced the Wicks to spend hundreds of thousands of additional dollars in forensic accounting fees and attorney fees.

Not only has her post embezzlement conduct cost the Wicks hundreds of thousands of dollars, she has hardly paid any restitution at all.  To date, she has only paid $4,200 in restitution in the civil case despite an annual household income of $126,252 in 2014; $90,376.00 in 2015; $68,393 in 2016, and $169,989 in 2017.

In conclusion, a 27 month term of imprisonment is a sentence that is sufficient, but not greater than necessary, to comply with the sentencing factors set out in 18 U.S.C. § 3553(a).

Respectfully submitted this August 21, 2018 at Milwaukee, Wisconsin.

        MATTHEW D. KRUEGER
        United States Attorney


By:   /s/
      ZACHARY J. COREY
      Assistant United States Attorney
      Wisconsin Bar Number 1076012
      E-Mail: zachary.corey@usdoj.gov
      Attorney for Plaintiff
      Office of the United States Attorney
      517 East Wisconsin Avenue, Room 530
      Milwaukee, Wisconsin 53202
      Telephone: (414) 297-1700