# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.              Case No. 18-CR-81

**JENNIFER GOSS**
   **Defendant.**

## STATEMENT OF REASON MEMORANDUM

Defendant Jennifer Goss embezzled more than $200,000 from her employer. Pursuant to an agreement with the government, she waived indictment and pleaded guilty to a wire fraud information, and I set the case for sentencing. In imposing sentence, the district court must first correctly calculate the advisory sentencing guideline range, then consider the arguments of the parties and the factors set forth in 18 U.S.C. § 3553(a), making an individualized assessment based on the facts presented. After settling on the appropriate sentence, the court must adequately explain the chosen sentence to promote the perception of fair sentencing. United States v. Pankow, 884 F.3d 785, 793 (7th Cir. 2018).

### I. GUIDELINE CALCULATIONS

Defendant's pre-sentence report ("PSR") set a base offense level of 7, U.S.S.G. § 2B1.1(a), then added 10 levels based on the loss amount, § 2B1.1(b)(1), and 2 levels for abuse of a position of trust, § 3B1.3, for an adjusted level of 19. Based on defendant's timely guilty plea and acceptance of responsibility, the PSR subtracted 3 levels under U.S.S.G. § 3E1.1, for a final level of 16. Coupled with defendant's criminal history category of I, this produced an imprisonment range of 21-27 months. I adopted the PSR's guideline calculations without

objection.

## II. SECTION 3553(a)

**A.   Sentencing Factors**

Section 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory sentencing guideline range;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: just punishment, deterrence, protection of the public, and provision of needed correctional treatment. Id. While the court must as part of its analysis consider the sentence recommended by the guidelines,

it "may not perfunctorily impose a guidelines sentence or even presume that such a sentence is appropriate in a given case." United States v. Warner, 792 F.3d 847, 855 (7th Cir. 2015). The court retains discretion "to select an appropriate sentence for the individual defendant and the surrounding circumstances." United States v. Musgraves, 883 F.3d 709, 715 (7th Cir. 2018).

**B.     Analysis**

**    1.     The Offense**

Over a roughly three year period, defendant, while working as the Chief Operating Officer and Bookkeeper at Financial Equipment Company ("FEC"), used her position to embezzle more than $200,000. After her scheme was uncovered, FEC was required to spend close to $100,000 on forensic accounting to discover the scope of her fraud.

The investigation revealed that defendant issued a series of checks on FEC's bank account payable to herself and her husband, also an employee at FEC, which were deposited into a bank account they maintained. After issuing these checks, defendant changed the entries in FEC's accounting system to make it appear that the checks had been issued to a legitimate vendor. She also authorized a number of electronic payments from FEC's bank account to pay the bill on a personal credit card. She further issued a series of checks to herself and her husband purportedly for reimbursement for health insurance premiums; with respect to 10 of these checks, defendant changed the entries in FEC's accounting records to make it appear that the checks had been issued to a different employee. Finally, the accounting firm identified three transactions in which defendant authorized electronic transfers from FEC's bank account to her personal PayPal account.

In addition to the large financial loss, which may have contributed to the failure of the

3

business, defendant's conduct represented a serious breach of trust. The offense affected the owner's health and financial security in retirement, as indicated in the statements attached to the PSR. It was even more hurtful because the victims considered defendant and her husband friends.[1]

Oftentimes in situations such as this, we learn that the embezzler was motivated by a gambling addiction, substance abuse problem, or some kind of mental health issue, or even significant financial hardship, but that did not seem to be the case here. In her statement to the PSR writer, defendant indicated that the money was not spent on lavish goods or services but rather to support her and her family's middle-class lifestyle.[2] She did not fully understand how or why she came to do what she did and was undertaking counseling to address issues related to why she would commit a crime like this. She stated that it started out gradually and when she saw there was no effective oversight she kept pushing further and further until it was discovered. She indicated that she is remorseful for her actions, regrets the impact it had on the victims, and also the impact it had on her family.

### 2. The Defendant

Defendant was 37 years old, with no prior criminal record and an otherwise positive background: high school graduate, good work history, married for 14 years, mother of two children, ages 10 and 12. She reported no history of mental or emotional health problems, or

---

[1] In April 2018, the victim obtained a civil judgment for $750,000 in state court. Defendant and her husband stipulated to pay $700 per month beginning on April 15, 2018, with the payments to increase to $1000 per month starting in April 2020 and until the judgment was paid in full.

[2] In her sentencing memorandum, however, defendant indicated that she now recognizes the theft was done more to "keep up with the Joneses" than truly provide for her family.

4

substance abuse issues. She obtained a new job in October 2015, after her termination by FEC, and I received a positive letter from her employer. I also received positive letters from her husband, mother, and mother-in-law.

### 3. The Sentence

The guidelines call for a term of 21-27 months, and the government presented a strong argument that a prison sentence at the high end of that range was needed to reflect the seriousness of this offense, which went on for years and involved attempts at concealment, caused real damage to the company and its owners, and represented a significant abuse of trust. I further noted that general deterrence may be more of a factor in white collar cases, where at least some of the people tempted to commit such crimes are rationale actors who would be dissuaded by the prospect of prison. I also noted the absence of any real mitigation in the offense: defendant was not a drug or gambling addict, and she and her husband had a good income. There appeared to be no reason to do this other than she thought she could get away with it.[3]

Defendant indicated that she had engaged in extraordinary acceptance of responsibility and ongoing efforts to pay restitution. While she did plead guilty to an information, I did not see anything extraordinary in that. Nor in the fact that she had, by the time of sentencing, made a handful of payments after the civil case resolved. I did consider her agreement to pay some of the employer's investigative costs, which likely could not be ordered under Lagos v. United

---

[3]As indicated, defendant had started attending therapy to try to gain insight into why she did this, and that seemed like a good idea.

5

States, 138 S. Ct. 1684 (2018), but I did not see that as all that extraordinary either.[4]

Defendant also asked that the court not give undue weight to the victim statements. She disputed that her theft was the sole cause of the business closing. There was no need for me, in this proceeding, to determine why the business failed; defendant acknowledged that her crime had a negative impact on the business. Defendant noted the lack of reliable evidence that the crime directly caused the owner's health problems. The government did provide a note from his doctor with its sentencing memorandum. In any event, it was also unnecessary for me to decide that medical issue here; it sufficed to note, and no one disputed, that the crime caused serious stress on the victim, which likely impacted his health to some degree. Defendant noted that the statements from the owner's friends, attached to the PSR and provided by the government, did not qualify as victim statements under 18 U.S.C. § 3771. But that did not mean they should be disregarded. Under 18 U.S.C. § 3661, the court can consider information from a variety of sources. In this case, I could not ignore the justified sense of personal betrayal, which was discussed in detail in the government's memo and in these statements.

However, I had to balance these aggravating factors against several important considerations under § 3553(a). First, there was no need for prison to protect the public from or to deter this defendant. She had no prior record, strong family support, and an otherwise positive background. She had also done well on pre-trial release. It seemed highly unlikely she would be in a position to do something like this again.

---

[4]The government responded that defendant obstructed the victims from reaching the truth and dragged out the civil litigation. I found it unnecessary to make findings on that contention; it sufficed to say that defendant had not shown extraordinary acceptance.

6

Second, a prison sentence would harm the victim by causing defendant to lose her job and thus her ability to pay restitution, a significant concern under § 3553(a)(7). I understood the victims' anger – it was entirely justified – but I noted that imposing a lengthy prison sentence could also be counterproductive. I also took into account the impact of a prison term on defendant's family, including her young children.

Ultimately, while this case presented a very close call, and a prison term could certainly have been justified, I found that a sentence served in the community could satisfy the purposes of sentencing. I placed defendant on probation for 5 years – the maximum term, to make sure she was monitored and paid restitution – and for the first year of that term placed her on home detention. She could not during this period leave her house except for work and other activities specifically approved by her supervising probation officer. This sentence provided a meaningful sanction, while allowing her to work and care for her family.

### III. CONCLUSION

I therefore placed defendant on probation for 5 years. I further ordered her to make restitution in the total amount of $304,343.14. In addition to the home confinement, I included financial monitoring conditions to ensure that she made a full effort to pay restitution and that she did not repeat the conduct at issue in this case.

Dated at Milwaukee, Wisconsin, this 4th day of September, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge

7